

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 25, 2008

**BY HAND DELIVERY**

The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

   Re:  **United States v. Melvin Lynch**
       **07 Cr. 853 (LAK)**

Dear Judge Kaplan:

  The Government respectfully submits this letter in advance of the sentencing of defendant Melvin Lynch, which is scheduled for Thursday, February 28, 2007, at 12:00 p.m. The defendant pleaded guilty to possessing a firearm after having been convicted of a felony, on November 21, 2007.

  The defendant argues that the Court should impose a sentence of 60 months – significantly below the Sentencing Guidelines range of 110-120 months set forth in the Probation Department's Presentence Investigation Report ("PSR") – on the following grounds: (1) he did not possess the firearm in connection with another felony offense, and therefore the four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6) should not apply; and (2) a sentence within the applicable Sentencing Guidelines range would be roughly ten times longer than the longest period of incarceration he has served for any of his prior offenses up to this point, and therefore would be greater than necessary to deter future criminal conduct. *See* Defendant's February 8, 2008 Sentencing Letter ("Def.'s Ltr.") at 3-6.

  For the reasons set forth below, the Government respectfully submits that a sentence within the Sentencing Guidelines range of 110-120 months would be sufficient, but not greater than necessary, to serve the purposes of sentencing.

The Honorable Lewis A. Kaplan
February 25, 2008
Page 2 of 6

## OFFENSE CONDUCT

As described in more detail in the PSR, the defendant's arrest on July 20, 2007 for being a felon in possession of a firearm arose out of an earlier episode of criminal activity that occurred three days earlier on July 17, 2007. On that evening, at approximately 1:10 a.m., the defendant and another man ("Individual-1") accosted David Irizarry in the Melrose Housing Projects in the Bronx. (PSR ¶ 6). The defendant and Individual-1, known to Irizarry as "Mel" and "Fat Cat," respectively, forced Irizarry to strip, then beat him and robbed him at gunpoint. The defendant then shot at Irizarry as he ran away from them. *Id*. Emergency 911 calls made from an adjacent housing project reported shots fired around that same time. *Id*.

Irizarry did not report this incident to the police until three days later, when he saw the defendant and Individual-1 again. (PSR ¶ 7). At approximately 12:40 a.m. on July 20, 2007, Irizarry went to Police Service Area 7 ("PSA 7"), located in the 40th Precinct in the Bronx, and told the police officers there that he had been robbed at gunpoint three days before and that he had just seen the two men who robbed him. *Id*. Irizarry brought two police officers to the location where he had seen the two men, but there were no longer there. *Id*. The police officers left a cellular telephone number where Irizarry could reach them if he saw his assailants again. *Id*. Approximately one hour later, Irizarry called the officers because he saw the defendant and Individual-1 near 3050 Park Avenue. *Id*. When the officers arrived, Irizarry identified the defendant and Individual-1 as the men who robbed him three days before. *Id*. The officers placed the defendant and Individual-1 under arrest, and recovered a Crescent .38 caliber revolver from the defendant's right front pants pocket. *Id*.

Following his arrest, and after being read his *Miranda* rights, the defendant made two separate statements to the police at the 40th Precinct. (PSR ¶ 8). The first was an oral statement, in which the defendant admitted that he possessed a firearm at the time he was arrested and that he had purchased the gun for approximately $250 from a male Hispanic named "Mike Murder" in the Dyckman Housing Projects in Manhattan in December 2006. *Id*. The second was a written statement, in which the defendant admitted that on July 17, 2007, he robbed Irizarry, whom he knew as "Chase," and that he "was acting like [he] had a gun on [him]" when he robbed him. (PSR ¶ 9). The defendant also gave a videotaped statement at the Bronx County District Attorney's Office, in which he again admitted that he possessed a gun on July 20, 2007.

## DISCUSSION

A.   **Application of the Sentencing Guidelines**

The United States Sentencing Guidelines (the "Guidelines") still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer

The Honorable Lewis A. Kaplan
February 25, 2008
Page 3 of 6

mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court recently stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall* v. *United States*, — U.S. —, 128 S. Ct. 586, 596 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1)); the four legitimate purposes of sentencing (§ 3553(a)(2)); "the kinds of sentences available" (§ 3553(a)(3)); the Guidelines range itself (§ 3553(a)(4)); any relevant policy statement by the Sentencing Commission (§ 3553(a)(5)); "the need to avoid unwarranted sentence disparities among defendants" (§ 3553(a)(6)); and "the need to provide restitution to any victims" (§ 3553(a)(7)). *Gall*, 128 S. Ct. at 596-97.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

(C)  to protect the public from further crimes of the defendant; and

(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 128 S. Ct. at 597 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. —,127 S. Ct. 2456, 2463 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 128 S. Ct. at 594; *see also Rita*, 127 S. Ct. at 2464. To the extent a sentencing

The Honorable Lewis A. Kaplan
February 25, 2008
Page 4 of 6

court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 128 S. Ct. at 597.

Here, the Probation Department has recommended a specific sentence of 110 months' imprisonment, which is within the Guidelines range of 110-120 months. The Court should strongly consider that recommendation in imposing sentence, and reject the arguments advanced by the defendant for a shorter prison term.

B.  **The Four-Point Enhancement For Use And Possession Of A Firearm In Connection With Another Felony Is Properly Applied In This Case**

Before asking the Court to impose a sentence below the Guidelines range, the defendant first takes issue with the calculation of the Guidelines range itself. He asserts that the four-point enhancement, pursuant to U.S.S.G. § 2K2.1(b)(6), should not apply to him because he did not use or possess a firearm in connection with another felony offense. *See* Def.'s Ltr. at 3-4. Despite the defendant's objection, it remains the Government's position that the defendant used and possessed a firearm in connection with the armed robbery of David Irizarry on July 17, 2007, and that accordingly, a four-point enhancement is properly applied in this case. The Probation Department agrees with the Government's position in its offense level computation in the PSR. *See* PSR ¶ 16. Because the defendant denies that he possessed a firearm on July 17, 2007, his objection to the application of this enhancement is factual, rather than legal. Accordingly, should the Court determine that it needs to resolve this factual dispute before it can impose sentence, the Government respectfully requests a Fatico hearing to prove by a preponderance of the evidence that the enhancement should apply.[1]

C.  **A Sentence Within The Guidelines Range Is Appropriate Regardless Of The Length Of The Defendant's Prior State Sentences**

The defendant next argues that he should be given a sentence of 60 months because his prior state sentences have, at most, been ten times shorter than the 110-120 month sentence he currently faces under the Guidelines, and that such a dramatic increase in prison time is not necessary to deter future criminal activity. This argument overreaches and lacks merit. As an initial matter, *United States* v. *Mishoe*, 241 F.3d 214 (2d Cir. 2001), upon which the defendant relies, does not support a departure of the magnitude that the defendant requests. In *Mishoe*, the Second Circuit found that district courts may consider, among other things, "the amount of time

---

[1] The Government also preserves its objection that the correct criminal history point total for the defendant is 20, not 18, as calculated by the Probation Department. PSR ¶ 55; *see also id.* at 17. However, as the defendant would remain in Criminal History Category ("CHC") VI regardless of which total is correct, the issue need not be resolved before sentencing.

The Honorable Lewis A. Kaplan
February 25, 2008
Page 5 of 6

previously served compared to the sentencing range called for by placement in CHC VI," in deciding whether to horizontally depart pursuant to U.S.S.G. § 4A1.3, on the grounds that CHC VI "significantly over-represents the seriousness of [the] defendant's criminal history or the likelihood that the defendant will commit further crimes." 241 F.3d at 219 (quoting U.S.S.G. § 4A1.3). However, *Mishoe* involved only a one-level horizontal departure from CHC VI to CHC V. *See id.* at 217. In asking for a sentence of 60 months, the defendant is essentially asking the Court to horizontally depart five levels from CHC VI to CHC I – a result that stretches *Mishoe* past the breaking point.[2]

Furthermore, a horizontal departure of any kind would be inappropriate in this case because the defendant's placement in CHC VI accurately reflects the seriousness of his criminal history. The defendant has a long and uninterrupted history of criminal convictions in each successive year since 1999, when he received his first juvenile conviction for criminal possession of a controlled substance in the fifth degree. Moreover, the seriousness of these offenses has escalated from year to year. From 1999 to 2005, the defendant was convicted of no less than eleven separate narcotics offenses, beginning with minor possession offenses and concluding with two convictions for criminal sale of a controlled substance in the fifth degree arising out of arrests in 2004 and 2005. See PSR ¶¶ 25-51. Unlike the defendant in *Mishoe*, who had only prior drug convictions, Lynch also has a prior weapons conviction (possession of a gravity knife in 2003), and a 2003 conviction for attempted assault in the third degree, which reveals a capacity for violent conduct. See PSR ¶¶ 38-41 (defendant and two others beat another person about the head and body with a piece of wood). Furthermore, the defendant's most recent criminal activity – assault, armed robbery, and discharge of a firearm – suggests that his capacity for violence has only increased over time. The result of all of these convictions is that the defendant has 20 criminal history points, well above the 13 points needed for CHC VI.[3] Given this history, a horizontal departure would be inappropriate.

Accordingly, although a sentence within the Guidelines range of 110-120 months would be a longer sentence than the defendant has served in the past, such a sentence is necessary to achieve the objectives of § 3553(a). As his criminal history makes clear, the defendant has shown little respect for the law, despite his many convictions. Indeed, the defendant committed the instant offense while on parole for his last narcotics conviction, indicating that he is more interested in engaging in a criminal life than a law-abiding life, even when he is provided help to steer a straight course. Moreover, the defendant's repeated involvement in drug activity, as well as his history of weapons possession and capacity for violence, presents a clear danger to the

---

[2] At offense level 25 and CHC I, the applicable Guidelines range is 57-71 months. Even using the defendant's offense level calculation of 21, the Court still would have to horizontally depart two levels from CHC VI to CHC IV to reach a sentence of 60 months.

[3] *See supra* note 1.

The Honorable Lewis A. Kaplan
February 25, 2008
Page 6 of 6

community. The Court's sentence in this case needs to address all of these issues, as well as adequately deter the defendant from engaging in this type of criminal activity in the future. The Government respectfully submits that a sentence within the Guidelines range of 110-120 months will achieve these goals.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that a sentence within the Sentencing Guidelines range of 110-120 months would be sufficient, but not greater than necessary, to achieve the legitimate purposes of sentencing.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

By:     /s/ Christian R. Everdell
Christian R. Everdell
Assistant United States Attorney
212-637-2556

cc:    Jennifer L. Brown, Esq.